KAREN GUTHRIE, *individually and on behalf of the Estate of Donald Guthrie*, )
)
)
Plaintiff, )
)
v. ) No. 1:11-cv-333-SKL
)
GREGORY BALL, M.D., )
)
Defendant. )

## ORDER

Before the Court is Defendant's "Motion in Limine #24 to Exclude Any Reference to Pain Management Guidelines" [Doc. 138], in which Defendant argues that various pain management guidelines, such as The American Academy of Pain Guidelines, should be excluded from evidence at trial. Plaintiff filed a response in opposition to Defendant's motion [Doc. 221]. Defendant filed a reply [Doc. 235], and this motion is now ripe.

**I.  BACKGROUND**

As reflected in multiple orders addressing a vast number of motions in limine filed by the parties, this is a healthcare liability action in which Plaintiff asserts negligence claims against Defendant for prescribing fentanyl patches for her late husband, Donald Guthrie ("Mr. Guthrie"). It appears to be undisputed that Mr. Guthrie's autopsy report indicates the cause of death resulted from fentanyl toxicity, but Defendant disputes this was the actual cause of death.

**II.  SUMMARY OF THE PARTIES' ARGUMENTS**

Defendant argues, in his motion, that the pain management guidelines do not set the standard of care in Tennessee, because they are national guidelines and Tennessee requires that the standard of care be established by expert testimony from an expert practicing in Tennessee or

a contiguous state. Defendant states that Dr. Hart testified during his deposition that the guidelines were controversial, and that Dr. Kasser testified that the guidelines do not necessarily reflect the standard of care because pain management is an evolving practice. Additionally, Defendant argues that such guidelines are hearsay without an exception, and thus Defendant contends that Plaintiff should be precluded from discussing any pain management guidelines at trial because Plaintiff has not established the reliability of such guidelines to qualify as an exception to the hearsay rule.

In her response, Plaintiff argues that the pain management guidelines, which are promulgated by associations of pain management physicians to provide guidance on prescribing opioids safely, are admissible. Plaintiff states that Defendant and all the standard of care experts belong to one or more of the professional associations that promulgated the guidelines, and Defendant's experts testified that the standard of care for prescribing opioid medications in Chattanooga is the same for the rest of the United States. Plaintiff argues that Defendant's experts' own testimony contradicts Defendant's argument in his motion that the pain management guidelines are not relevant to the standard of care in Chattanooga, Tennessee. Plaintiff further argues that Defendant's experts agreed with the pain management guidelines except for a few limited exceptions, and Defendant's experts did not testify that the guidelines did not apply because of a local difference in the standard of care.

Plaintiff also argues that the cases relied upon by Defendant have no bearing on whether pain management guidelines can be used with experts who admit that the standard of care for pain management is the same everywhere and generally agree with the guidelines. Plaintiff argues that Defendant's reliance upon *Hartsell* is misplaced, because that case focused on whether the trial court had erred by excluding the AMA ethical opinion which was offered into

2

Case 1:11-cv-00333-SKL   Document 240   Filed 10/17/14   Page 2 of 11   PageID #: 5021

evidence without expert testimony, and the case turned on the fact that the plaintiff had waived the error by failing to offer proof at trial. Plaintiff further argues the case involved the defendant trying to use the AMA ethics opinion instead of expert testimony as required by Tennessee law. So Plaintiff argues that this case has no bearing on the admissibility of the pain management guidelines, which would be used in conjunction with expert testimony or to cross-examine opposing experts.

Plaintiff further argues that the other case relied upon by Defendant, *French v. Stratford House*, 333 S.W.3d 546, 561 (Tenn. 2011), which Defendant cited for the proposition that "it is improper to use alleged violations of federal and state regulations to prove a deviation in the standard of care as a component of a medical malpractice claim," [Doc. 138 at Page ID # 2503], actually only holds that federal and state regulations are inadmissible in medical malpractice claims to prove negligence per se. Plaintiff states that she is not seeking to use the pain management guidelines in a negligence per se claim, and thus this case is distinguishable from *French*. Additionally, Plaintiff argues that the *French* court based its decision on Tennessee's local standard of care, while Defendant's experts have agreed that the local standard of care is the same as the national standard of care, and Defendant's experts have agreed with most of the pain management guidelines. Plaintiff therefore contends that the *French* case is inapplicable here.

Plaintiff also argues that Defendant neglected to mention Tennessee authority permitting guidelines to be admitted with expert testimony in a medical malpractice case, and cites to *Richardson v. Miller*, 44 S.W.3d 1, 23-24 (Tenn. Ct. App. 2000) for the proposition that the policies and guidelines for the use of a pain pump were relevant and admissible, and while they "'do not, by themselves establish a physician's standard of care for determining when the

3

infusion pump should be used, they can materially assist the trier of fact'" in determining whether the physician acted negligently. [Doc. 221 at Page ID E 4674 (quoting *Richardson*, 44 S.W.3d at 23-24)]. Plaintiff argues that just as the guidelines in *Richardson* were admissible, so too are the pain management guidelines in the instant case, as they will materially assist the trier of fact regarding the standard of care, together with the expert testimony.

Additionally, Plaintiff argues that the pain management guidelines are also admissible because they are relevant to cause of death. Plaintiff further argues that the pain management guidelines are not barred by the hearsay rule, as they are (1) permitted for use with experts under Rule 703 because the medical guidelines are reasonably relied upon by experts in the field; (2) are an admission of a party opponent under Rule 801(d)(2); (3) may be used as a prior inconsistent statement under Rule 801(d)(1) to impeach any of Defendant's experts who do not testify consistently with their deposition testimony; (4) have other non-hearsay purposes as statements not being offered for the truth of the matter asserted, such as impeachment; and (5) should be admitted under Rule 803(18)'s exception for reliable authorities such as treatises, periodicals, or pamphlets. Finally, Plaintiff's last argument is that the pain management guidelines are relevant and their probative value is not substantially outweighed by their prejudicial effect, so the guidelines should not be excluded under Rule 403.

In reply, Defendant argues that no expert witness has actually testified that the guidelines at issue reflect the applicable standard of care in Chattanooga, Tennessee, particularly for March 2010. Defendant states that Plaintiff's counsel repeatedly asked Defendant's experts if they agreed with broad statements from certain pain management guidelines, but there is no testimony in which the experts applied such broad statements to the applicable standard of care in Chattanooga, Tennessee, or to the care that was provided in this case. Defendant argues that

4

none of the testimony cited in Plaintiff's response indicates that the principles set forth in the quoted guidelines applied to the care provided to Mr. Guthrie. Defendant argues that there is no testimony establishing that the 2008, 2009, or 2012-2013 guidelines reflect the standard of care for Chattanooga in 2010. Defendant therefore argues that these guidelines are not relevant and should be excluded.

Defendant argues that no expert has testified that the 2012-2013 guidelines apply to the standard of care applicable in 2010, when Mr. Guthrie was treated by Defendant. Defendant argues that the experts' agreement with portions of the guidelines does not change the fact that the guidelines do not define the standard of care in Tennessee, which must be established by expert testimony.

Defendant also distinguishes *Richardson* from the instant case, because Defendant contends that *Richardson* involves prescribing guidelines drafted by the defendant for the specific pain pumps at issue in that litigation. Defendant states that the named defendant's own policy requiring an EKG prior to the use of a pain pump was the guideline at issue in *Richardson*. Defendant contends that permitting argument that a defendant failed to follow its own protocols, as in *Richardson*, is different than the guidelines Plaintiff seeks to admit here, because the guidelines Plaintiff seeks to introduce do not reflect the standard of care applicable to Chattanooga, Tennessee or Defendant's practice. Defendant states that there is no testimony that Defendant adopted the guidelines Plaintiff is seeking to introduce, and thus Defendant contends that *Richardson* is inapposite, so the Court should exclude the guidelines as irrelevant.

### III. ANALYSIS

Plaintiff argues that the pain management guidelines are admissible (1) as a basis for expert testimony under Rule 703 as materials relied upon by experts in the field; (2) as an

5

admission by a party opponent under Rule 801(d)(2); as a prior inconsistent statement under Rule 801(d)(1) to impeach any expert who does not testify consistently with their deposition testimony; (4) as non-hearsay for purposes not being offered for the truth of the matter asserted, such as impeachment; and (5) as reliable authorities under Rule 803(18)'s exception. The Court will first address general relevancy and then address each of these arguments by Plaintiff.

### A. General Relevancy

Rule 401 sets the standard for relevancy, stating that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, Plaintiff seeks to admit three different versions of pain management guidelines, each published in a different year. Plaintiff seeks to admit pain management guidelines published in the years dated 2008, 2009, and 2012-2013. Regarding the pain management guidelines published in 2012-2013, the Court agrees with Defendant that these pain management guidelines are not relevant to establishing standard of care in this case, as they were promulgated after Mr. Guthrie's treatment by Defendant and after his death. *See Toole v. McClintock*, 999 F.2d 1430, 1434 (11th Cir. 1993) (finding that materials published years after patient's surgery were irrelevant and inadmissible as to what the physician knew or should have known about risks "[a]s a simple matter of timeliness").

Plaintiff does argue that the pain management guidelines are also relevant to cause of death, not just standard of care. Plaintiff states that "[a] major theme in the pain management guidelines is preventing patient deaths," and "Defendant denies that his actions caused [Mr. Guthrie's] death," so Plaintiff contends that the portions of the pain management guidelines which pertain to the risk of opioid-induced deaths are relevant to cause of death and may be

6

relied upon by Plaintiff's experts and used to cross-examine Defendant's witnesses. Plaintiff does not cite to any authority in support of this argument, and Plaintiff does not specifically argue that the 2012-2013 guidelines are relevant to cause of death, only that the guidelines in general are relevant to cause of death. Thus, because Plaintiff has not demonstrated that the 2012-2013 guidelines are relevant in this matter, the 2012-2013 pain management guidelines will be excluded at trial. Defendant's motion will therefore be **GRANTED IN PART** with respect to the 2012-2013 pain management guidelines.

### B. Basis for Expert Testimony

Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.

Regarding Plaintiff's arguments that the pain management guidelines are admissible under Rule 703 as a basis for expert testimony, Plaintiff has not shown that any expert actually relied upon the guidelines in formulating their opinions. Plaintiff correctly notes in her reply that Defendant's experts admitted they were *familiar* with the guidelines and *agreed* with many of the pertinent provisions of the guidelines—however, the experts never stated that they *relied* upon the guidelines. Thus, the Court does not find that the pain management guidelines should be admitted under Rule 703 as a basis for an expert's testimony based on the current record.

### C. Admission of Party Opponent

Plaintiff next argues that the pain management guidelines should be admitted under Rule 801(d)(2) as a statement of a party opponent. Rule 801(d)(2) provides that a statement is not hearsay where

> [t]he statement is offered against an opposing party and:
>
> (A) was made by the party in an individual or representative capacity;
>
> (B) is one the party manifested that it adopted or believed to be true;
>
> (C) was made by a person to whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). Here, Plaintiff states that Defendant's experts admitted they were familiar with the guidelines and agreed with most of the portions quoted by Plaintiff's counsel during their depositions. Plaintiff contends that Defendant's experts' admissions concerning the pain management guidelines are therefore admissions of a party opponent. While Defendant does not respond to this argument by Plaintiff directly in his reply, Defendant does distinguish the case cited by Plaintiff, *Richardson v. Miller*, 44 S.W.3d 1, 23-24 (Tenn. Ct. App. 2000). Plaintiff cites this case to stand for the idea that guidelines are admissible in a medical malpractice case to show standard of care, together with expert testimony. Defendant distinguishes *Richardson* from the instant case because *Richardson* involved guidelines that were actually drafted by the named defendant, while the guidelines here have not been drafted or even adopted by Defendant, based on the record. Defendant argues that his experts' mere familiarity with the guidelines and their agreement to portions of the guidelines does not establish the guidelines as an admission by a party opponent, and the Court agrees. The statements themselves—acknowledging familiarity and agreement with portions of the pain management guidelines—may very well fall under Rule 801(d)(2), but the actual pain management guidelines would not.

8

### D. Inconsistent Statement

Plaintiff argues that the pain management guidelines should be admissible under Rule 801(d)(1) as an inconsistent statement if Defendant or his experts testify inconsistently with their deposition testimony. Plaintiff also argues that the pain management guidelines should be admissible as extrinsic evidence of an inconsistent statement under Rule 613. The Court notes that Plaintiff cited no authority in support of this argument. Under Rule 801(d)(1), a statement is not hearsay where

> [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement: (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition; . . .

Fed. R. Evid. 801(d)(1)(A). Rule 613(b) permits admission of extrinsic evidence of a witness's prior inconsistent statement, but only where "the witness is given an opportunity to explain or deny the statement and an adverse party is given the opportunity to cross examine the witness about it." Fed. R. Evid. 613(b).

If Defendant or Defendant's experts testify at trial inconsistently with their deposition testimony, such deposition testimony would be admissible as an inconsistent statement under Rule 801(d)(1). However, the pain management guidelines themselves would still not be admissible as a prior inconsistent statement, only the deposition testimony would be.

As to Plaintiff's argument that the pain management guidelines would be admissible as extrinsic evidence of the prior inconsistent statement, the Court disagrees. Extrinsic evidence of a prior inconsistent statement is admissible to impeach, however the admission of extrinsic evidence is within the district court's broad discretion. *United States v. Higa*, 55 F.3d 448, 452 (9th Cir. 1995) (quoting *United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir. 1993)). Because the pain management guidelines would not be necessary to impeach the witnesses, as the actual

9

inconsistent statement made during deposition could be used to impeach, the Court does not find that the pain management guidelines would be admissible as extrinsic evidence under Rule 613 on the current record.

### E. Non-hearsay Purposes

As to Plaintiff's contention that the pain management guidelines would be admissible for non-hearsay purposes, such as impeachment, Plaintiff does not provide any authority or argument in support. Regarding impeachment, as noted above with respect to prior inconsistent statements, the pain management guidelines would not be admissible to impeach, because the witness's prior deposition testimony would be sufficient to impeach. As Plaintiff has not provided further argument on this matter, and the Court declines to make arguments for the parties, this argument by Plaintiff also fails based on the current record.

### F. Reliable Authorities Exception

Rule 803(18) provides an exception to the hearsay rule for

> [a] statement contained in a treatise, periodical, or pamphlet, if:
>
> (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

Fed. R. Evid. 803(18). The Rule specifically notes that "[i]f admitted, the statement may be read into evidence but not received as an exhibit." Fed. R. Evid. 803(18).

If Plaintiff calls an expert witness's attention to the pain management guidelines during direct or cross-examination, and the expert establishes the pain management guidelines as a reliable authority, the pain management guidelines would be admitted in that they could be read

into evidence, but not received as an exhibit.  Plaintiff has not shown that any expert witness has specifically testified that certain pain management guidelines are a reliable authority.  However, assuming that Plaintiff may question one of the experts at trial to establish certain pain management guidelines are reliable authority, the Court will **RESERVE RULING** as to whether the pain management guidelines are admissible as a reliable authority under Rule 803(18).

**IV.  CONCLUSION**

Accordingly, Defendant's "Motion in Limine #24 to Exclude Any Reference to Pain Management Guidelines" [Doc. 138] is **GRANTED IN PART** in that the 2012-2013 pain management guidelines are inadmissible.  The Court will **RESERVE RULING** as to whether the 2008 and 2009 pain management guidelines are admissible.

SO ORDERED.

ENTER:

                                           s/ *Susan K. Lee*
                                           SUSAN K. LEE
                                           UNITED STATES MAGISTRATE JUDGE